KILPATRICK TOWNSEND & STOCKTON LLP
DENNIS L. WILSON (Bar No. 155407)
DWilson@ktslaw.com
CAROLINE Y. BARBEE (Bar No. 239343)
CBarbee@ktslaw.com
1801 Century Park East Suite 2300
Los Angeles, CA  90067
Telephone:  310-248-3830
Facsimile:    310-860-0363

Attorneys for Plaintiff
META PLATFORMS, INC.

SARA T. SCHNEIDER (SBN 298103)
sara.schneider@afslaw.com
OSCAR A. FIGUEROA (SBN 313238)
oscar.figueroa@afslaw.com
ARENT FOX SCHIFF LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013
Telephone:    213.629.7400
Facsimile:    213.629.7401

Attorneys for Plaintiffs
CHRISTIAN LOUBOUTIN S.A.S.,
CHRISTIAN LOUBOUTIN L.L.C., and
CLERMON ET ASSOCIES

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., A DELAWARE CORPORATION, CHRISTIAN LOUBOUTIN S.A.S., CHRISTIAN LOUBOUTIN L.L.C., A NEW YORK LIMITED LIABILITY COMPANY, AND CLERMON ET ASSOCIES,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CESAR OCTAVIO GUERRERO ALEJO,<br><br>                    Defendant. | CASE NO.:  3:23-CV-5923<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Meta Platforms, Inc. ("Meta"), Christian Louboutin S.A.S., Christian Louboutin L.L.C., and Clermon et Associés (collectively, "Louboutin") allege the following:

### INTRODUCTION

1.      Meta and Louboutin jointly bring this action in response to Defendant's unlawful use of Facebook and Instagram to sell counterfeits, including fake Louboutin products. Since at least June 2020 and continuing until at least May 2023, Defendant Cesar Octavio Guerrero Alejo ("Defendant") has operated an online business, trafficking in illegal counterfeit goods. Defendant used Facebook and Instagram to promote his business selling counterfeit products, including counterfeit Louboutin-branded shoes, handbags, and accessories, in violation of Meta's terms. Meta has previously disabled Defendant's accounts and removed posts for promoting the sale of counterfeit goods in violation of Meta's terms, which prohibit violating the intellectual property rights of others. Despite Meta's enforcement efforts, Defendant continued to use Facebook and Instagram to promote the sale of Louboutin-branded counterfeit goods and the unauthorized use of several of Louboutin's registered trademarks, including notably: the CHRISTIAN LOUBOUTIN word mark; the CHRISTIAN LOUBOUTIN and LOUBOUTIN script signature logo marks; and the RED SOLE logo mark (collectively, the "Louboutin marks").

2.      Meta brings this action to stop Defendant's ongoing violation of Meta's terms. Louboutin brings this action to stop Defendant's continuing infringement and counterfeiting, false designation of origin, dilution of its valuable trademarks, and unfair competition through Defendant's unauthorized advertisement, offer for sale, sales, and promotion of counterfeit merchandise bearing the Louboutin marks.

### PARTIES

3.      Plaintiff Meta Platforms, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California. Meta's services include the Facebook and Instagram apps.

4.      Plaintiff Christian Louboutin S.A.S. is a French public limited company with its principal place of business in Paris, France.

5.      Plaintiff Christian Louboutin L.L.C. is a New York limited liability company with its principal place of business in New York, New York.

6.     Plaintiff Clermon et Associés is a Société Pluri-Professionnelle d'Exercice par Actions Simplifiée with its principal place of business in Paris, France.

7.     Defendant Guerrero is a citizen and resident of Culiacán, Sinaloa, Mexico.

8.     Defendant used multiple aliases and online monikers, including "Cesar Vendimias Cg," "Octavio Guerrero," "Cesar Alejo," "El Sin Nombre," "RC Shop," "Luxury Sinaloa," "shopcg_cln," "Buchi Fresa," "Octavio," "shopping_luxury_02," "Aluminios y Cristales," "Reliv Culiacan," "Shop CG," "ventas_cln._mx," and "blackphone_cln," among others.

## JURISDICTION AND VENUE

9.     The Court has federal jurisdiction over the federal causes of action alleged in this Complaint pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1338(a) and (b).

10.     The Court has supplemental jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1338(b) and 1367, including for the claims under the common law of trademark infringement and unfair competition, because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11.     The Court also has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between the Plaintiffs and Defendant exists, and because the amount in controversy exceeds $75,000.

12.     Defendant created and used multiple Facebook accounts and thereby agreed to Meta's Terms of Service ("TOS") and Commercial Terms. The Court has personal jurisdiction over Defendant because Meta's TOS and Commercial Terms contain a forum selection clause that requires this complaint be resolved by this Court, and that Defendant submit to the personal jurisdiction of this Court.

13.     Defendant created and used multiple Instagram accounts and thereby also agreed to the Instagram Terms of Use ("TOU"). The Instagram TOU contain a forum selection clause that requires this complaint be resolved by this Court, and that Defendant submits to the personal jurisdiction of this Court.

14.     In addition, the Court has personal jurisdiction over Defendant because he knowingly directed and targeted his actions at California and at Meta which has its principal place of business in California. Defendant transacted business and engaged in commerce in California by, among other things, accepting payment via a Western Union money transfer location in California. Defendant promoted his ability to ship counterfeit goods to the United States and shipped counterfeit goods to a California address.

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged occurred in this District. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction. Venue is also proper with respect to Defendant pursuant to 28 U.S.C. § 1391(c)(3) because Defendant does not reside in the United States.

16.     Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Meta is located in San Mateo County.

## FACTUAL ALLEGATIONS

### A.     Background on the Facebook and Instagram Platforms

17.     Meta owns and operates Facebook and Instagram. Facebook is a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. As of December 2022, Facebook daily active users averaged 2 billion and monthly active users averaged 2.96 billion, worldwide.

18.     Instagram is a photo and video sharing service, mobile application, and social network. Instagram users can post photos and videos to their profile. They can also view, comment on, and like posts shared by others on Instagram.

### B.     Meta and Instagram Terms ("the Terms")

19.     All Facebook users agree to Meta's TOS (available at https://www.facebook.com/legal/terms) and other rules that govern access to and use of Facebook.

20.     All Instagram users agree to Instagram's TOU (available at https://help.instagram.com/478745558852511/?helpref=hc_fnav).

21.     Section 3.1 of the Meta TOS requires users to "[u]se the same name that [they] use in everyday life," "[p]rovide accurate information about [them]self," "[c]reate only one account ([their] own)," and use that account "for personal purposes," and prohibits users from using Facebook if Meta "previously disabled [a user's] account for violations of [the TOS] or [Facebook] Policies."

22.     Section 3.2.1 of the Meta TOS prohibits users from: (a) doing anything "unlawful, misleading, [] or fraudulent"; and (b) doing anything that "infringes or violates someone else's rights, including their intellectual property rights."

23.     Instagram's TOU prohibit users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (b) "do[ing] anything that violates someone else's rights, including intellectual property"; (c) "impersonat[ing] someone or something you aren't"; (d) "violat[ing] . . . [Instagram] Terms or [Instagram] policies"; and (e) using Instagram if Meta "previously disabled your account for violation of law or any of [Instagram's] policies."

### C.     Meta's Measures to Protect Intellectual Property Rights

24.     Meta prohibits Facebook and Instagram users from posting content that infringes third parties' intellectual property rights, including copyright infringement, trademark infringement, and the promotion, sale, or advertisement of counterfeit goods. *See, e.g.*, Meta TOS, Sections 3.1 and 3.2.1; Instagram TOU. Meta has a variety of measures and tools in place to help people and organizations protect their intellectual property rights across its platforms and services and to combat infringements, including counterfeits, on its platforms and services.

25.     Meta operates a global notice-and-takedown program that provides dedicated communication channels for rights holders to report posts or other user-generated content they believe to be infringing, including content on Facebook and Instagram that promotes, advertises, or sells counterfeit goods. Meta makes available publicly accessible reporting forms to streamline and expedite the reporting of intellectual property violations, including a form for reporting counterfeits specifically (available at https://www.facebook.com/help/contact/628238764025713).

26.     Meta employs a global team to review these reports. If a report is complete and

valid, Meta promptly removes the reported content (e.g., disables a violating account or removes a violating post). In addition, Meta notifies both the rights holder and the violating user of the fact of and reason for the removal. In the second half of 2022, Facebook and Instagram removed more than 1.7 million posts or other user-generated content based on reports of counterfeit goods.

27.     Even where a report identifies a single post (for example, a photograph on a Facebook or Instagram account), typically Meta reviews the entire account. If there is evidence of widespread infringement, rather than remove only the reported post, Meta disables the account. Likewise, Meta disables the accounts of Facebook and Instagram users who repeatedly violate the Terms prohibiting violations of the intellectual property rights of others. This "repeat infringer" policy applies to numerous surfaces, including Facebook accounts, Pages, groups, ad accounts, and Instagram accounts. When a repeat infringer's account is disabled, Meta informs the user that they are no longer permitted to use its service.

### D.     Louboutin's Rights and Anti-Counterfeiting Efforts

28.     Founded in 1991 in Paris, France, the Christian Louboutin brand is one of the most well-known, valuable, and popular luxury brands known worldwide for its trend setting, bold, and high-end designs. The brand, immediately recognizable by its signature, and trademarked, red soles, has garnered a celebrity following, including among many others, Beyoncé, Taylor Swift, Sarah Jessica Parker, and Jennifer Lopez, and has been featured in music, television, and movies as a symbol of success and luxury.

29.     The Christian Louboutin name and mark was first used in the United States in 1992. Since that time, Louboutin has sold shoes in high-end department stores throughout the United States. The Louboutin brand has also expanded its product offerings to include, *inter alia*, men's shoes, belts, handbags, beauty products, and other accessories. These products are distributed and sold throughout the United States under the Louboutin marks, including notably the CHRISTIAN LOUBOUTIN word mark; the CHRISTIAN LOUBOUTIN and LOUBOUTIN script signature logo marks; the RED SOLE position mark; and the RED SOLE logo mark.

30.     The Louboutin-branded products can be found at its many Louboutin retail boutiques as well as through its official website, https://us.christianlouboutin.com/. Louboutin-

branded products are also sold online and in-store at select high-end department stores, including Nordstrom, Bloomingdales, Neiman Marcus, and Saks Fifth Avenue, among others.

31.     Every year, Louboutin spends millions in promoting products offered under the Louboutin marks. Louboutin further has maintained its status as a top designer by employing the highest standards for craftsmanship and materials. Louboutin's efforts have resulted in high quantities of sales in the United States.

32.     As a result of effective promotion and sales, the Louboutin marks are instantly recognizable to the general public and exclusively associating Louboutin as the sole source of products bearing, and sold under, the Louboutin marks and signaling the high quality of those products. The Louboutin marks are tremendously valuable assets of Louboutin as a result of their acquisition of substantial goodwill and secondary meaning in the marketplace.

33.     Louboutin owns several federal trademark registrations in addition to its widespread common law rights in the world-famous Louboutin marks, including:

| Trademark | Class and Description of Goods and Services | Reg. Date |
|---|---|---|
|  1,816,940 | IC 025. US 039. G&S: shoes | 1/18/94 |
|  3,361,597 | IC 025. US 022 039. G&S: women's high fashion designer footwear. | 1/1/08 |
| CHRISTIAN LOUBOUTIN 3,425,538 | IC 018. US 001 002 003 022 041. G&S: handbags, evening handbags | 5/13/08 |
| CHRISTIAN LOUBOUTIN 3,206,366 | IC 025. US 022 039. G&S: Footwear [, headwear] | 2/6/07 |

| | | |
|---|---|---|
| <br>3,376,197 | IC 018. US 001 002 003 022 041. G&S: [ Leather and imitation leather, animal skins and animal hides; trunks, chests and suitcases; umbrellas, parasols and walking sticks; whips, harnesses and saddlery; ] shoulder bags, 'eggar's bags, handbags, leather shopping bags, rucksacks, travelling bags, college satchels, [ beach bags, ] school bags, satchels, [ leather bags for merchandise packaging and ] pouches of leather; [ garment bags for travel; ] leather or imitation leather goods, namely, leather bags, [ suitcases and ] wallets, [ leather for shoes; ] purses not of precious metal, wallets with card compartments [, attaché cases; travel sets comprising bags, suitcases and cases ] [ ; unfitted vanity cases sold empty ]<br><br>IC 025. US 022 039. G&S: Footwear [, headwear; gloves, belts ] [ ; scarves ] | 1/29/08 |
| <br>3,876,383 | IC 025. US 022 039. G&S: Footwear, except orthopedic footwear | 11/16/10 |
| LOUBI<br>4,654,832 | IC 003. US 001 004 006 050 051 052. G&S: Cosmetics, perfumery products, [ non-medicated preparations for skin care, bath soaps; bath and body products, namely, shower and bath gels, oils and beads; nail care preparations; ] nail polish; lipstick [, cosmetic preparations for eyelashes ]<br><br>IC 018. US 001 002 003 022 041. G&S: [ Goods made of leather and imitation leather not included in other classes, namely, key cases, document cases, hat boxes of leather, satchels, leather travel sets, namely, leather baggage; ] beach bags, garment bags for travel, [ leather or leather-board boxes; ] trunks and traveling bags; handbags; wallets; [ backpacks; leather briefcases; cases of leather or leatherboard; leather suitcases; coin purses; ] purses; carrier bags [ ; baskets of leather] ; evening bags<br><br>IC 025. US 022 039. G&S: Footwear | 12/16/14 |

| | | |
|---|---|---|
| 4,438,425 | IC 003. US 001 004 006 050 051 052. G&S: (Based on 44(e)) Cosmetics; perfumery; [ non-medicated skin care preparations; bath soaps; bath and body products, namely, bath and shower gels, oils and beads; nail care preparations; ] nail polishes<br>IC 009. US 021 023 026 036 038. G&S: (Based on 44(e)) Protective covers and cases for cell phones [, laptops, tablet computers, reading devices, and portable media players ]<br><br>IC 014. US 002 027 028 050. G&S: (Based on 44(e)) Jewelry [, watches, watch bands ]<br><br>IC 016. US 002 005 022 023 029 037 038 050. G&S: (Based on 44(e)) [ Paper shopping bags, ] cardboard shoe boxes.<br><br>IC 018. US 001 002 003 022 041. G&S: (Based on 44(e)) (Based on Use in Commerce) Handbags, evening bags, wallets, travel bags, purses, tote bags.<br><br>IC 025. US 022 039. G&S: [ (Based on 44(e)) Hosiery, stockings, tights; ] (Based on Use in Commerce) Footwear.<br><br>IC 035. US 100 101 102. G&S: (Based on 44(e)) Retail store services and online retail store services featuring perfumes and cosmetics; (Based on Use in Commerce) Retail store services and online retail store services featuring footwear, handbags, evening bags. | 11/26/13 |
| 4,442,328 | IC 009. US 021 023 026 036 038. G&S: Protective covers and cases for [ tablet computers, ] reading devices and portable media players.<br><br>IC 018. US 001 002 003 022 041. G&S: Handbags, evening bags, wallets, travel bags, purses, tote bags. | 12/3/13 |
| 6,852,768 | IC 018. US 001 002 003 022 041. G&S: Handbags; evening bags; wallets; purses; tote bags; backpacks; all-purpose carrying bags; beach bags; travel bags; leather shoulder bags. | 11/20/22 |

Copies of the certificates of registration for the U.S. Louboutin marks are attached hereto as

**Exhibit 1**. These registrations are valid and subsisting, and U.S. Reg. Nos. 1,816,940; 3,361,597;

3,425,538; 3,206,366; 3,376,197; 3,876,383; 4,654,832; 4,438,425; and 4,442,328 are incontestable.

34.     Louboutin makes significant efforts to protect its valuable intellectual property to safeguard its legacy and its customers from infringers and counterfeiters worldwide. To that end, Louboutin has adopted a zero-tolerance policy and has put in place a comprehensive program to deal with bad actors attempting to sell fake Louboutin merchandise. Through its "Stopfake" online program (https://stopfake.christianlouboutin.com/en/), Louboutin has endeavored to educate and encourage consumers to spot and avoid counterfeit Louboutin-branded products.

35.     Louboutin actively cooperates and partners with U.S. Customs and Border Protection and other law enforcement agencies in the United States and around the world to identify and combat illegal counterfeiting. Louboutin regularly pursues legal action to stop online counterfeiters. Examples of recent seizures of counterfeit Louboutin-branded merchandise include the following:

| DATE | COUNTRY | CONTENT |
|---|---|---|
| December 9, 2022 | China | Seizure of 186 counterfeiting goods by Customs |
| October 19, 2022 | Bulgaria | Seizure of 65 counterfeiting goods by Customs |
| October 11, 2022 | United States | Seizure of 479 counterfeiting goods by Customs |
| October 7, 2022 | Italy | Seizure of 142 counterfeiting goods by Customs |
| September 9, 2022 | China | Seizure of 960 counterfeiting goods by Customs |
| June 16, 2022 | China | Raid, with the help of local authorities, leading to the seizure of 83.800 packaging items |
| May 19, 2022 | South Africa | Seizure of 96 counterfeiting goods by Customs |
| April 7, 2022 | Malaysia | Seizure of 2060 counterfeiting goods by Customs |
| March 10, 2022 | South Africa | Seizure of 102 counterfeiting goods by Customs |
| January 24, 2022 | Switzerland | Seizure of 95 counterfeiting goods by Customs |
| January 18, 2022 | China | Raid, with the help of local authorities, leading to the seizure of 672 counterfeiting goods |
| January 18, 2022 | China | Raid, with the help of local authorities, leading to the seizure of 1060 packaging items |

36.     Partnering with Meta, Louboutin is bringing this action to deter Defendant from his continued advertisement, promotion, offers for sale, and sales of low-quality copies of Louboutin

goods at high price points for counterfeits.

      **E.**     **Defendant Accepted the Meta and Instagram Terms**

    37.    At all relevant times, Defendant was bound by Meta's and Instagram's Terms and Policies.

    38.    Between May 3, 2010 and January 11, 2023, Defendant created and maintained at least 44 Facebook user accounts. For example:

        a.    On May 3, 2010, Defendant created a Facebook user account with the username "Cesar Guerrero."

        b.    On August 23, 2020, Defendant created a Facebook user account with the username "RC Shop."

        c.    On November 8, 2022, Defendant created a Facebook user account with the username "BuchiFresa Store."

        d.    On January 9, 2023, Defendant created a Facebook user account with the name "ventas_cln._mx."

        e.    On January 10, 2023, Defendant created a Facebook user account with the name "shopping_luxury_02."

        f.    On January 11, 2023, Defendant created a Facebook account with the name "shopcg."

    39.    Between October 15, 2015 and December 28, 2022, Defendant created and maintained at least 32 Instagram accounts. For example:

        a.    On October 15, 2015, Defendant created an Instagram account with the name "porte_luxury."

        b.    On December 11, 2016, Defendant created an Instagram account with the name "shopping_luxury_02."

        c.    On March 10, 2017, Defendant created an Instagram account with the name "rc_shop_cln."

        d.    On February 11, 2018, Defendant created an Instagram account with the name "shopcg_cln."

e. On November 30, 2022, Defendant created an Instagram account with the name "el_oso_shop."

f. On December 28, 2022, Defendant created an Instagram account with the name "shop_rcve."

40. Defendant also created and maintained at least 30 Facebook Pages, 19 Business Manager accounts, and 19 ad accounts.

**F.    Overview of Defendant's Counterfeiting Business**

41. Since at least June 2020, Defendant has used a web of Facebook and Instagram accounts to promote his business in violation of the Terms. On his Facebook and Instagram accounts and Facebook Pages, Defendant offered for sale branded, luxury "clothes and accessories for women and men" to consumers and resellers and promised "100% secure shipments" "to all of Mexico and the United States." *See, e.g.*, Figures 1 and 2, *infra*.

42. As early as June 2020, Defendant's Facebook and Instagram accounts and Facebook Pages listed dozens of counterfeit products for sale featuring designer brand names, including Louboutin. On Facebook and Instagram, Defendant has used spurious marks that are identical to, or substantially indistinguishable from, or are otherwise confusingly similar to the Louboutin Marks, without Louboutin's authorization. Defendant has used these spurious marks in connection with various products, including shoes and belts.

43. Defendant offered and sold Louboutin-branded goods that were not genuine products of Louboutin and that were materially different from Louboutin's genuine products. Further, Defendant was not an authorized reseller of authentic Louboutin goods. Louboutin did not approve Defendant's actions.

**G.    Defendant Promoted the Sale of Counterfeit Goods on Facebook and Instagram in Violation of the Terms**

44. Between at least June 2020 and November 2023, Defendant used his Facebook and Instagram accounts to promote counterfeit goods offered for sale. Defendant used Louboutin-branded products in these promotional posts.

45. For example, on June 2, 2015, Defendant created a Facebook Page called "Luxury

Sinaloa." **Figure 1** is a screenshot of a June 2, 2020 post on the Luxury Sinaloa Page including

contact information for the Defendant and a pair of Louboutin-branded sneakers for sale.[1] On

November 16, 2023, Meta disabled "Luxury Sinaloa" for violating Meta's Terms of Service

against violating third parties' intellectual property rights.

**Figure 1: Defendant's Counterfeit Louboutin Sneakers**



46.     On February 11, 2018, Defendant created an Instagram account with the username

"shopcg_cln." **Figure 2** is a screenshot of a January 30, 2023 post including contact information

for Defendant and three Louboutin-branded sneakers. On November 16, 2023, Meta disabled the

"shopcg_cln" account for violating Instagram's Terms against violating third parties' intellectual

property rights.

---

[1] Figures 1 & 2 reflect machine translations using open source tooling to convert Spanish text to English. Telephone numbers have been redacted from Figures 1 & 2.

1

## Figure 2: Defendant's Counterfeit Louboutin Sneakers

2

3



4

5

6

7

8

9

10

11

12

13

14      47.     On or around May 13, 2023, Louboutin's agent purchased a pair of counterfeit

15  shoes from Defendant advertised on his Instagram account, "el_oso_shop." Louboutin's agent

16  communicated with Defendant through WhatsApp and made payment to Defendant through a

17  Western Union location in the San Francisco area. Defendant confirmed receipt of the Western

18  Union payment on the same day. On May 17, 2023, Louboutin's agent received a DHL shipment

19
at its San Francisco, California address with a return address from Culiacán, Sinaloa. The
20
shipment contained a box with a pair of shoes in a white cloth bag with multiple references to
21
22  "Christian Louboutin."

23      **Figure 3** includes photographs of the counterfeit shoes that Louboutin's agent received

24  from Defendant on May 17, 2023 at its San Francisco, California address after completing the

25  purchase. Louboutin has confirmed that the shoes purchased from Defendant are not genuine and

26  are counterfeit.

27

28

**Figure 3: Defendant's Counterfeit Sneakers**









### H.      Meta's Enforcement Efforts

48.      Since October 2022, to protect Facebook and Instagram users and in response to reports by Louboutin, Meta has taken multiple enforcement actions against Defendant for violating the Terms. These include disabling his accounts on Facebook and Instagram and removing posts that promoted counterfeit products. Nonetheless, Defendant continued to access and use Facebook and Instagram without permission.

49.      On November 16, 2023, Facebook disabled additional Facebook and Instagram accounts and Pages controlled by Defendant.

### FIRST CAUSE OF ACTION

### TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114

### *(By Louboutin against Defendant)*

50.      Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

51.      Defendant has knowingly, intentionally, and without Louboutin's consent, used in commerce reproductions, counterfeits, and/or copies and/or spurious designations that are identical with or substantially indistinguishable from the Louboutin marks in connection with the sale, offer for sale, distribution, advertising, or promotion of goods covered by the Louboutin marks. Defendant's use causes confusion or mistake or deceives consumers, causing consumers to believe that Defendant's counterfeit merchandise is affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Louboutin's despite the fact that it is not.

52.      Defendant has intentionally used these reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from the Louboutin marks, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

53.      Defendant used the Louboutin marks to advertise, promote, offer for sale, distribute, and sell goods bearing counterfeit marks without Louboutin's consent.

54.      Defendant's use of counterfeit marks was willful and done with the knowledge that the marks are counterfeit. As such, Defendant's acts constitute willful trademark counterfeiting in violation of 15 U.S.C. § 1114 *et seq.*

COMPLAINT                                                                                          - 16 -
CASE NO.:  3:23-CV-5923

55.     Defendant's acts as alleged herein constitute use in commerce of the Louboutin marks.

56.     Louboutin has suffered damages in an amount to be determined or in the statutory amount allowed pursuant to 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c).

57.     Louboutin is also entitled to disgorge Defendant's profits derived from his unlawful conduct and/or Louboutin's lost profits from sales of genuine goods due to Defendant's conduct, trebled, to the fullest extent allowable by law.

58.     As a direct result of Defendant's willful and unlawful actions, Louboutin has suffered and continues to suffer irreparable harm and damages, including damage to and diminution of the Louboutin marks, lost sales, and loss of brand control. Louboutin's remedy at law is not adequate to compensate for injuries inflicted by Defendant. Thus, Louboutin is entitled to injunctive relief.

## SECOND CAUSE OF ACTION

## TRADEMARK INFRINGEMENT, 15 U.S.C. 1114

### *(By Louboutin against Defendant)*

59.     Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

60.     Louboutin is the owner of the Louboutin marks, which are federally registered, valid, inherently distinctive, and protectable trademarks.

61.     Defendant has used, authorized, and/or directed the use of the infringing and counterfeit marks in connection with the advertisement, promotion, sale, offering for sale, and distribution of counterfeit goods.

62.     Defendant has used the Louboutin marks, knowing that they are the exclusive property of Louboutin, in connection with his sale, offers for sale, distribution, promotion, and advertisement of his goods bearing counterfeits or infringements of the Louboutin marks.

63.     Defendant's use of the Louboutin marks causes confusion in the marketplace and creates the false and misleading impression that Defendant is connected with, sponsored by, or licensed or approved by Louboutin to use the Louboutin marks to advertise, manufacture,

distribute, offer for sale, or sell goods bearing the Louboutin marks when Defendant was not so authorized.

64.     Defendant's use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

65.     As a direct and proximate result of Defendant's trademark infringement and false designation of origin, Louboutin has been damaged within the meaning of 15 U.S.C. § 1114 *et seq.*

66.     Louboutin has suffered damages in an amount to be determined or in the statutory amount. Statutory damages up to the maximum for willful infringement are warranted. Louboutin is also entitled to damages in the form of reasonable royalties. Further, corrective advertising is necessary to remedy the misimpressions and false association already proliferated by Defendant in the marketplace.

67.     Louboutin is further entitled to disgorge Defendant's profits for his willful and reckless sales and unjust enrichment, including ongoing infringement, and because of the breadth of usage with either the failure to run an adequate trademark search or, if known, in complete disregard of Plaintiff's prior rights. Such disgorgement is necessary due to the mental state of the infringement, unjust enrichment and/or to deter future infringement by Defendant and others similarly situated.

68.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendant's acts were willful, in willful blindness and reckless disregard, and in bad faith, entitling Louboutin to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits.

69.     As a direct result of Defendant's willful and unlawful actions, Louboutin has suffered and continues to suffer irreparable harm and damages, including damage to and diminution in value of the Louboutin marks, necessary corrective advertising, lost sales, and loss of brand control. Louboutin's remedy at law is not adequate to compensate for injuries inflicted by Defendant. Thus, Louboutin is entitled to injunctive relief.

### THIRD CAUSE OF ACTION

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125

### *(By Louboutin against Defendant)*

70.     Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

71.     Louboutin is the owner of the Louboutin marks.

72.     Defendant's use of the Louboutin marks has caused confusion in the marketplace, is likely to cause both confusion and mistake, is likely to deceive consumers or result in the belief that Defendant is legitimately connected with, sponsored by, or licensed or approved by Louboutin. As a result of Defendant's unauthorized use of the Louboutin marks, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendant's counterfeit merchandise.

73.     Defendant's use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

74.     As a direct and proximate result of Defendant's trademark infringement and false designation of origin, Louboutin has been damaged within the meaning of 15 U.S.C. § 1125(a).

75.     Louboutin has suffered damages in an amount to be established after proof at trial.

76.     Louboutin is further entitled to disgorge Defendant's profits for its willful sales and unjust enrichment. In addition, disgorgement is warranted to deter further infringement by Defendant and others similarly situated.

77.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendant's acts were willful, in willful blindness and reckless disregard, and taken in bad faith, entitling Louboutin to its attorneys' fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits. Louboutin is also entitled to reasonable royalties as damages.

78.     As a direct result of Defendant's willful and unlawful actions, Louboutin has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the Louboutin marks. Louboutin's remedy at law is not adequate to compensate for injuries inflicted by Defendant. Thus, Louboutin is entitled to injunctive relief.

## FOURTH CAUSE OF ACTION

## TRADEMARK DILUTION, 15 U.S.C. § 1125

### *(By Louboutin against Defendant)*

79.     Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

80.     The Louboutin marks are famous, well-known and distinctive and have been for many years. The Louboutin marks achieved such status long prior to Defendant's infringing activities.

81.     Defendant's unauthorized advertisement, promotion, display, offer for sale, sales, and distribution of counterfeit merchandise bearing the Louboutin marks in commerce is likely to impair the distinctive quality of, and harm the reputation of, Louboutin's distinctive, well-known and famous Louboutin marks.

82.     Defendant's unauthorized advertisement, promotion, display, offering for sale, sales, and distribution of counterfeit merchandise bearing the Louboutin marks in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to the Louboutin marks, that is, consumer identification of the Louboutin marks as originating form a single source, namely Louboutin.

83.     Moreover, because Defendant's counterfeit merchandise is not subject to Louboutin's quality control standards, Defendant's unauthorized advertisement, promotion, display offering for sale, sales, and distribution of counterfeit merchandise bearing the Louboutin marks is likely to cause dilution by tarnishing the reputation that Louboutin has built up and enjoys in its high-quality Louboutin products under the Louboutin marks.

84.     Defendant's acts as alleged herein constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c).

85.     Defendant's use of the Louboutin marks is deliberate, willful, fraudulent, and constitutes knowing dilution of the Louboutin marks.

86.     By reason of Defendant's acts as alleged herein, Louboutin has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of the Louboutin marks, as well as irreparable harm to Louboutin's business, goodwill, and reputation.

Louboutin has no adequate remedy at law because damage to its goodwill and reputation are continuing and difficult to ascertain.

## FIFTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

### *(By Louboutin against Defendant)*

87.     Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

88.     Louboutin has federal and common law rights throughout the entire United States to the Louboutin marks, including, but not limited to under the common law of the State of California.

89.     Defendant committed acts of unfair competition, including trademark infringement, false designation of origin, trademark dilution, unlawful business practices, and related misconduct referred to in this Complaint. These actions constitute unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive, untrue or misleading business practices. The actions cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and were done in connection with sales and/or advertising. These actions were intentional and knowing acts of infringement through use of the Louboutin marks on counterfeit merchandise. Further, such wrongful conduct threatens and/or harms consumers and competitors and competition in the industry.

90.     As a direct and proximate result of Defendant's wrongful acts, Louboutin has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, Louboutin's remedy at law is not adequate to compensate for injuries inflicted by Defendant, Louboutin is entitled to injunctive relief.

91.     By reason of such wrongful acts, Louboutin is, was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationships. Defendant has wrongfully obtained profit and benefits instead of Louboutin. As a result, Louboutin is entitled to compensatory damages and disgorgement of Defendant's said profits in an amount to be proven at trial. In addition, profits should be disgorged as deterrence, for willful infringement and unjust

enrichment. The damages and/or profits awarded should be trebled or enhanced.

92.     Defendant's acts as alleged above were done with malice and oppression, thus entitling Louboutin to exemplary and punitive damages for common law trademark infringement and unfair competition pursuant to California Civil Code § 3294.

93.     Louboutin is entitled to its reasonable attorneys' fees under California state law.

<u>**SIXTH CAUSE OF ACTION**</u>

**VIOLATION OF BUS. & PROF. CODE § 17200**

***(By Louboutin against Defendant)***

94.     Louboutin repeats and incorporates all other paragraphs as if fully set forth herein.

95.     Defendant's acts of trademark infringement, false designation of origin, and trademark dilution constitute unfair competition with Louboutin under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200, *et seq.*

96.     Defendant's conduct is unfair because it allows him to benefit unjustly by virtue of the goodwill and reputation associated with Louboutin, the Louboutin marks, and its goods and services. Defendant has intentionally violated, and continues to violate, Louboutin's rights in the Louboutin marks and related commercial benefits.

97.     Defendant's conduct is likely to confuse the public as to whether Defendant's counterfeit merchandise is somehow related to, or approved or sponsored by, Louboutin.

98.     As a direct, proximate, and foreseeable result of Defendant's wrongful conduct, Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from its unfair competition in an amount to be proven at trial.

99.     By reason of Defendant's wrongful acts as alleged in this Complaint, Louboutin has suffered and will suffer monetary damages.

100.     Louboutin, and the public at large, have been, and continue to be, irreparably damaged by Defendant's willful violation of California State law, common law, and the Lanham Act, and Louboutin has no adequate remedy at law because damage to its goodwill and reputation are continuing and difficult to ascertain. Unless enjoined, Defendant's unlawful and unfair conduct

will continue, further injuring Louboutin and confusing the public.

### SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT UNDER CALIFORNIA LAW

#### *(By Meta against Defendant)*

101.    Meta repeats and incorporates all other paragraphs as if fully set forth herein.

102.    Defendant created and used Facebook and Instagram accounts, thereby agreeing to the Meta and Instagram Terms. Meta's and Instagram's Terms constitute valid and enforceable agreements between Defendant and Meta.

103.    Meta has performed all conditions, covenants, and promises required of it in accordance with its agreements with Defendant.

104.    Since at least June 2020, and continuing to the present, Defendant has used a web of Facebook and Instagram accounts to promote the sale of counterfeit Louboutin goods.

105.    Defendant has breached and continues to breach Meta's Term 3.1, which requires users to: (i) "[u]se the same name that [they] use in everyday life," (ii) "[p]rovide accurate information about [them]self"; (iii) [c]reate only one account ([their] own)"; and (iv) and use their account "for personal purposes."

106.    Defendant has breached and continues to breach the Instagram Terms and Meta's Term 3.2.1, which prohibit users from: (i) using Facebook and Instagram if Meta "previously disabled [a user's] account for violations of [the TOS/TOU] or [Facebook/Instagram] Policies"; (ii) doing anything "unlawful, misleading, [] or fraudulent"; and (iii) doing anything that "infringes or violates someone else's rights, including their intellectual property rights."

107.    Defendant's many breaches have caused Meta to incur damages in excess of $75,000, in an amount to be determined at trial.

108.    Defendant has demonstrated a pattern of creating new accounts after previously created accounts have been disabled, establishing a pattern of recidivism and attempts to bypass Meta's prior enforcement efforts.

109.    Meta is, therefore, entitled to a permanent injunction against Defendant as set forth in the Prayer for Relief below to stop Defendant's persistent breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.     That the Court enter judgment against Defendant that Defendant has:

    a.     Breached Defendant's contracts with Meta in violation of California law;

    b.     Violated 15 U.S.C. § 1125(a) and (c) by willfully infringing the Louboutin marks by using false designation of origin and dilution, through the advertising, promotion, offer for sale, and sales of Defendant's counterfeit merchandise; and 15 U.S.C. § 1114 by willfully infringing the Louboutin marks;

    c.     Unfairly competed with Louboutin in violation of Cal. Bus. & Professions Code §§ 17200; and

    d.     Infringed and unfairly competed with Louboutin in violation of the common law of the State of California.

2.     That the Court enter a permanent injunction enjoining and restraining Defendant and his agents, servants, employees, successors, and assigns, and all other persons acting in concert or conspiring with any of them or who are affiliated with Defendant (collectively, the "Enjoined Parties") from:

    a.     Accessing or attempting to access Meta's services, platforms, and computer systems, including notably Facebook and Instagram;

    b.     Creating or maintaining any Facebook or Instagram accounts in violation of the Terms, including the Meta TOS and Instagram TOU;

    c.     Engaging in any activity, or facilitating others to do the same, that violates the Terms, including the Meta TOS and Instagram TOU;

    d.     Using the Louboutin marks, or any other mark likely to cause confusion or mistake with the Louboutin marks (including any alternative spellings or variations of those marks) in, on, or with any products or services, or in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on websites or social media;

e.   Using any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to lead the consuming public or individual members thereof, to believe that any products or services, offered, promoted, marketed, advertised, provided, sold, or otherwise distributed by the Enjoined Parties are in any manner associated or connected with Louboutin, or are licensed, approved, or authorized in any way by Louboutin;

f.   Representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, Louboutin;

g.   Registering or maintaining any domain names in the Enjoined Parties' possession, custody, or control that include the word "Christian Louboutin" (including any similar alternative spellings or variations of the word), or that are otherwise confusingly similar to the Louboutin marks;

h.   Registering or maintaining any social media accounts (such as YouTube, LinkedIn, Facebook, Instagram, WhatsApp, or X (formerly Twitter)) that promote the Louboutin marks (including any alternative spellings or variations of the marks);

i.   Unfairly competing with Louboutin in any manner whatsoever, or engaging in any unfair, fraudulent, or deceptive business practices that are related in any way to the production, distribution, marketing, offer for sale, and/or sale of products and services bearing the Louboutin marks, or any other mark or trade name likely to cause confusion with the Louboutin marks or trade name (including any alternative spellings or variations of those marks); and

j.   Applying for or seeking to register any other mark likely to cause confusion or mistake with the Louboutin marks (including any alternative spellings or variations of the mark or trade name);

3.      That the Court enter judgment against Defendant requiring Defendant:

      a.      To destroy any remaining inventory of merchandise as well as any and all advertising and promotional materials, displays, marketing materials, web pages, and all other data or things that use the words "Christian Louboutin" (including any similar alternative spellings or variations of the words), or that are otherwise confusingly similar to the Louboutin marks; and

      b.      To file with this Court and serve on Plaintiffs within thirty days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

4.      That the Court enter judgment against Defendant, awarding Plaintiffs:

      a.      Restitution and disgorgement;

      b.      Treble damages, in an amount to be proven at trial, pursuant to 15 U.S.C. § 1117;

      c.      Costs, reasonable attorneys' fees, and investigators' fees incurred in this action as permitted by law;

      d.      Pre-judgment interest on their judgment; and

      e.      Such other and further relief as the Court may deem just and proper.

DATED:  November 16, 2023          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By: */s/ Caroline Y. Barbee*
      DENNIS L. WILSON
      CAROLINE Y. BARBEE

Attorneys for Plaintiff
META PLATFORMS, INC.

DATED:  November 16, 2023                Respectfully submitted,

                                         ARENT FOX SCHIFF  LLP.


                                         By: */s/ Sara T. Schneider*
                                             SARA T. SCHNEIDER
                                             OSCAR A. FIGUEROA

                                         Attorneys for Plaintiffs
                                         CHRISTIAN LOUBOUTIN S.A.S.,
                                         CHRISTIAN LOUBOUTIN L.L.C., and
                                         CLERMON ET ASSOCIES

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

DATED:  November 16, 2023                Respectfully submitted,

                                         KILPATRICK TOWNSEND & STOCKTON LLP


                                         By: */s/ Caroline Y. Barbee*
                                             DENNIS L. WILSON
                                             CAROLINE Y. BARBEE

                                         Attorneys for Plaintiff
                                         META PLATFORMS, INC.

DATED:  November 16, 2023                Respectfully submitted,

                                         ARENT FOX SCHIFF  LLP.


                                         By: */s/ Sara T. Schneider*
                                             SARA T. SCHNEIDER
                                             OSCAR A. FIGUEROA

                                         Attorneys for Plaintiffs
                                         CHRISTIAN LOUBOUTIN S.A.S.,
                                         CHRISTIAN LOUBOUTIN L.L.C., and
                                         CLERMON ET ASSOCIES